JOHN W. HUBER, United States Attorney (#7226)
MICHAEL KENNEDY, Assistant United States Attorney (#8759)
BRYAN R. WHITTAKER, Assistant United States Attorney (#16764)
Attorneys for the United States of America
111 South Main Street, Suite 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682 • Facsimile: (801) 524-3399
email: michael.kennedy@usdoj.gov
bryan.whittaker@usdoj.gov

*FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH FEB 12 2019 D. MARK JONES, CLERK BY DEPUTY CLERK*

*SEALED*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUAN ANTONIO AVILA;<br>JOSE ANDRES AVILA; and<br>CARLOS DELMAZO VALDEZ,<br><br>Defendants. | Case No. 2:19mj147 BCW<br><br>CRIMINAL COMPLAINT<br><br>VIO: CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE<br>[21 U.S.C. § 846]<br><br>Magistrate Judge Brooke C. Wells |

Before a United States Magistrate Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

COUNT 1

On or about February 7, 2019, in the Northern Division of the District of Utah and elsewhere,

JUAN ANTONIO AVILA;
JOSE ANDRES AVILA; and
CARLOS DELMAZO VALDEZ,

the Defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree with each other and with other persons known and unknown, to commit the following offense against the United States of America:

    a. To distribute a controlled substance, to wit, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance within the meaning of 21 U.S.C. § 812, in violation of 21 U.S.C. § 841(a)(1),

    all in violation of 21 U.S.C. § 846 and punishable under 21 U.S.C. § 841(b)(1)(A).

\* \* \*

Complainant states that this complaint is based on information obtained through investigation consisting of the following:

I, Camryn Faiola, being duly sworn, hereby depose and say:

    1.    I am an Agent with the Weber Morgan Narcotics Strike Force (WMNSF) and have been so assigned since April 2018. My assignment with the WMNSF is to work on narcotics investigations and I have been cross-designated as an FBI Task Force Officer (TFO). Prior to my assignment with the WMSNF, I worked as a patrol officer with the Ogden Police Department from February 2007-

June 2012, then as a Community Police Officer from June 2012- April 2018. I have completed numerous hours of training with respect to narcotics investigations. As an FBI TFO, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal drug laws and related federal criminal laws. As an FBI TFO, I have participated in the investigation and prosecution of persons who have violated federal laws. The majority of these investigations involved narcotics-related violations, and many resulted in the execution of search warrants.

2. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States. As a result of my training and experience as an FBI TFO, I am familiar with federal laws including Title 21, United States Code, Section 841(a)(1), Possession with Intent to Distribute a Controlled Substance.

3. This affidavit does not contain all of the information known to your affiant but rather only those facts believed necessary to obtain an arrest warrant. I am familiar with the facts and circumstances set forth herein as a result of my personal participation in this investigation, as well as my review of official reports and records and conversations with other law enforcement officers as more fully described below. The facts in this affidavit come from my personal observations, my specialized training and experience, and information obtained from other agents and/or witnesses.

4.     Based on the facts set forth in this affidavit, I believe that there is probable cause that **JUAN ANTONIO AVILA, JOSE ANDRES AVILA, and CARLOS DELMAZO VALDEZ** committed violations to include Conspiracy to Distribute Methamphetamine, in violation of Title 21, United States Code, Section 846.

## PROBABLE CAUSE

5.     On February 7, 2019, the Weber Morgan TOCW Task Force (hereinafter, the Task Force), with the assistance of a Confidential Informant (hereinafter, the CI), arranged a controlled buy operation where the CI arranged the purchase of approximately 5 pounds of methamphetamine in exchange for $25,000 from an individual known only as "Mo." The CI met with Mo, and a group of other male individuals in Salt Lake City, Utah. The CI contacted an Officer of the Task Force in order for the officer to listen to the conversation of the CI and the subjects. The Task Force Officer overheard a subject ask the CI if he/she had the money for the purchase of narcotics. The CI informed the questioning subject that the money was located near exit 343 off Interstate 15, West Haven, Utah. The CI added it would be necessary to travel there to receive the payment. The Task Force Officer also heard the CI and subjects discuss the price of the narcotics. Ultimately, the subjects agreed to follow the CI north to the location where the CI said the money was located.

4

6. Upon review of recorded conversations between the CI and Mo, prior to departing from Salt Lake City, the Task Force Officer heard the CI ask if the "stuff was real or not." Mo said it was the "best stuff". Mo explained he used it and had been up for three days as a result. Mo added the guy delivering the methamphetamine was "Sinaloa". In my training and experience this signifies the distributor and product are from the Sinaloa Cartel.

7. The CI said a white Nissan truck (hereinafter, the Nissan), bearing Utah plate X08-6PV, was traveling north behind the CI. A records check for the Nissan indicated the Nissan, a 2009 Nissan Titan, was registered to an individual later designated as UNCHARGED COCONSPIRATOR #2. The occupants of the Nissan were a Hispanic male and a white male. Mo remained in Salt Lake City. While en route, the CI notified the Task Force that the methamphetamine would arrive in a separate vehicle, other than the Nissan. The CI also notified the Task Force that the number of occupants in the truck were three, not two as originally believed. The CI believed the third person was previously ducking down in the backseat.

8. The CI confirmed that the Task Force had established surveillance in the vicinity of Denny's, 1172 2100 West, West Haven, Utah (hereinafter, the Location). The white male passenger of the Nissan was later identified as UNCHARGED COCONSPIRATOR #1

9. As the CI arrived at the Location, the Nissan entered behind the CI vehicle and parked next to the CI. UNCHARGED COCONSPIRATOR #1 exited the Nissan and entered the CI's vehicle. The CI asked if he/she could see the methamphetamine. UNCHARGED COCONSPIRATOR #1 said the persons bringing the methamphetamine had not arrived and were mad because the deal was supposed to occur in Salt Lake at an earlier hour. UNCHARGED COCONSPIRATOR #1 said a problem with the transaction was there were "two middle men" involved. UNCHARGED COCONSPIRATOR #1 said "their guy" was coming up in a separate car so they had to wait for him. UNCHARGED COCONSPIRATOR #1 asked the CI if he/she had the money. The CI told UNCHARGED COCONSPIRATOR #1 the cash would be available after the methamphetamine arrived. UNCHARGED COCONSPIRATOR #1 explained when the methamphetamine arrived, that the CI and UNCHARGED COCONSPIRATOR #1 would show the money for the purchase and then the methamphetamine would be available. The CI asked UNCHARGED COCONSPIRATOR #1 about the identity of the occupant of the Nissan. UNCHARGED COCONSPIRATOR #1 told the CI that the occupant is UNCHARGED COCONSPIRATOR #1's "hook" and he did not want to introduce him to the CI. UNCHARGED COCONSPIRATOR #1 exited the vehicle and the driver of the Nissan, who was later designated UNCHARGED

COCONSPIRATOR #2, walked to the vehicle of the CI and spoke with CI. UNCHARGED COCONSPIRATOR #1 told CI that he could get six more pounds if the CI wanted. The CI agreed to six and UNCHARGED COCONSPIRATOR #1 said he would ask for the six pounds. The CI called the Task Force Officer as notification that the make of the vehicle transporting the methamphetamine was unknown.

10. A short time later, a gray Volkswagen SUV (hereinafter, the Volkswagen), bearing Utah license plate N816F, arrived at the Location. The CI entered the rear passenger seat and UNCHARGED COCONSPIRATOR #1 entered the front passenger seat. The driver of the vehicle was later identified as Carlos Delmazo Valdez (hereinafter, Valdez). There was a male sitting in the rear driver side seat, later identified as Juan Antonio Avila (hereinafter, Juan). Juan had a backpack with him and opened the backpack to show the CI the suspected five pounds of methamphetamine. The CI told the subjects he/she was going to get the money at the motel and exited the vehicle. The CI gave the Task Force the predetermined takedown signal and agents moved in and detained all involved parties who were passengers in the Nissan, the Volkswagen, and a Mazda sedan (hereinafter, the Mazda).

11. As a result of the arrest, 2427.14 grams of suspected methamphetamine were seized from the backpack found in the Volkswagen, where

Juan was seated when the Task Force intervened. The methamphetamine field tested positive for methamphetamine a Schedule II Controlled Substance.

12. When officers were placing Valdez in handcuffs, they observed a semi-automatic handgun in Valdez's waistband, specifically on his rear right hip area. The handgun was a Taurus Millenium G2, 9mm pistol. It had a loaded magazine with a round in the chamber.

13. The driver of the Volkswagen, Valdez agreed to talk to investigators after being advised of his Miranda Rights and waiving his rights. Valdez said he was in the Volkswagen and stated the vehicle was his mother's. Valdez was then asked about the circumstances of what transpired today. Valdez said two of his friends, Juan and Juan's brother Jose Andres Avila (hereinafter Jose), told Valdez they needed a favor and that Valdez was not receiving payment for what happened today. Valdez said Juan and Jose were in the Mazda vehicle during the deal at Denny's. Valdez was later asked if the favor was to transport narcotics, which he said it was. Valdez was unaware of who had arranged the narcotics deal or who the narcotics would be sold to. Carlos said he knows Juan and Jose from a previous job where they worked together. Valdez said he frequently "hangs out" with Juan and Jose and was planning to do so on the day of the controlled buy.

14. Valdez said he was getting gas at a Walmart in the Layton area when Juan and Jose contacted him. Valdez said they met him at the gas station in the

Mazda and told Valdez to follow them. Juan was driving the Mazda and Jose was riding passenger. Valdez said he followed the Mazda to a home in a "nice neighborhood" in the Layton area, but did not know any further details of the home other than it was white. Valdez said he had his work backpack in the Volkswagen and said Juan and Jose took his backpack into the residence in the Layton area. Juan and Jose returned from the home with his backpack and put it in the Volkswagen. Valdez was then directed to drive to Denny's. Valdez said he had looked in the backpack and observed wrapped packages in the backpack. Valdez said he thought "What the fuck" upon seeing the packages in the backpack and Valdez said he questioned his decision to help his friends. Valdez said he was aware the deal at Denny's was for the sale of drugs. Valdez said after he parked at Denny's, Juan and two other males, whom he did not know, entered the Volkswagen. Juan sat in the seat behind the driver seat where the backpack with methamphetamine was later found by the Task Force. Valdez said Task Force officers moved in on the involved parties not long after Juan and the unknown males entered his vehicle. Valdez stated multiple times that both Juan and Jose were present during their arranged drug sale at Denny's and that Juan and Jose referred to the home in the Layton area as their residence before catching himself and stating he did not know how the home in the Layton area was related to Juan and Jose.

15. A Task Force officer conducted an interview of Juan after he had been advised of his rights per Miranda and agreed to speak without an attorney present. Juan stated he had arranged the distribution of the methamphetamine. Juan stated he picked up the methamphetamine from somebody in the parking lot of Crown Burger in Layton, Utah, and subsequently transferred it to the driver, who is a male he only knows as "China" or "Carlos" of the Volkswagen (previously identified as Valdez). Valdez was to transport the suspected methamphetamine to Ogden. Juan took these steps to avoid being subject to a traffic stop while in the possession of methamphetamine. Juan agreed to pay Valdez $500 to transport the narcotics to Ogden. Juan admitted to distributing methamphetamine.

16. During the interview, Juan stated he possessed additional methamphetamine, which was stored in the closet of his bedroom at his residence, 2606 South 575 West, Syracuse, Utah (hereinafter, the Residence). Juan said there were approximately five kilograms contained in a bag in the closet. Juan added there were multiple firearms located in the bedroom.

17. Based on the information provided, a State of Utah Search Warrant was applied for and obtained for the Residence. Task Force officers executed the search warrant and located, with Juan's cooperation, a large amount of US currency, two (2) cellphones, an identification for Juan, five firearms, drug

packaging material and related equipment, digital scale, and approximately 5,940.2 grams methamphetamine. All of these items were located in the bedroom of Juan.

## CONCLUSION

18.     Based on the aforementioned facts, I believe that there is probable cause that **JUAN ANTONIO AVILA, JOSE ANDRES AVILA, and CARLOS DELMAZO VALDEZ** committed violations to include Conspiracy to Distribute Methamphetamine, in violation of Title 21, United States Code, Section 846. I swear that this information is true and correct to the best of my knowledge, information, and belief. I further request a warrant for arrest be issued based upon he facts set forth herein.

CAMRYN FAIOLA
Task Force Officer
Federal Bureau of Investigation


SUBSCRIBED AND SWORN TO BEFORE ME this ____ day of February, 2019.

BROOKE C. WELLS
United States Magistrate Judge


APPROVED:

JOHN W. HUBER
UNITED STATES ATTORNEY

MICHAEL KENNEDY
Assistant United States Attorney

11